## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DEIDRE L. SANDERS** § | | **CIVIL ACTION NO.** |
| *Plaintiff* § | | |
| § | | |
| **v.** § | | |
| § | | |
| **THE CITY OF JENNINGS** § | | |
| § | | |
| § | | |
| *Defendant* § | | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **DEIDRE L. SANDERS,** who hereby files her Original Complaint against Defendant **THE CITY OF JENNINGS.** Plaintiff hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act as it appears at 29 U.S.C. § 621 *et seq*, and 42 U.S.C. § 1981.

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

   b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

3. Plaintiff initially filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on or about March 30, 2020 (Charge 461-2020-01400). *See* Exhibit C. This same charge number was subsequently amended to include information surrounding Plaintiff's termination on or about May 8, 2020. *See* Exhibit A.

4. The EEOC mailed Plaintiff her Notice of Suit Rights on November 17, 2020. *See* Exhibit B. Plaintiff is afforded 90 days from her receipt of such Notice to commence suit, and the date of this filing is within that statutory period.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Jefferson Davis Parish, making the Lake Charles Division the most appropriate Division for this suit.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the city of Jennings, Parish of Jefferson Davis, State of Louisiana, which is in this judicial district.

7. At all times relevant to this suit, Plaintiff worked in landscape maintenance, specifically as a grass cutter, for the City of Jennings. As such, Plaintiff was a public employee.

8. At the time of the acts complained of herein, Plaintiff was approximately fifty-six (56) years old and, as such, was a member of a protected class. Furthermore, Plaintiff is an African American female and of lesbian sexual orientation and, as such, is a member of those respective protected classes.

9. Defendant, **CITY OF JENNINGS**, is a municipal corporation organized and existing under the domestic laws of the State of Louisiana. Its principal place of business in located in the city of Jennings, Parish of Jefferson Davis, State of Louisiana.

## FACTUAL ALLEGATIONS

10. Plaintiff (hereinafter referred to as "Sanders" or "Plaintiff") first began her employment with the City of Jennings (hereinafter referred to as the "City" "Jennings" or "Defendant") in 2003 as a laborer making $7.25/hour. She has worked consistently with the City for the last 17 years with an exemplary service record. Despite being passed over for promotions by less qualified Caucasian workers as discussed *infra*, her pay rose as a laborer from the federal minimum wage to $10.00 per hour at the time of her sudden and unexpected termination.

11. Plaintiff is an openly lesbian woman. As such, the City and its employees were well aware of Plaintiff's sexual orientation and consistently over the course of her tenure with the Defendant, Sanders was subject to unwanted and unwelcome harassment and improper comments on the basis of her sexual orientation. Furthermore, Plaintiff was privy to inappropriate sexual comments directed at other women while Plaintiff was working to which she expressed her opposition and faced retaliatory treatment for doing so.

12. As one example, a former City employee Madelyn Benoit, who has also filed a Charge of Discrimination against the City of Jennings, was made victim to unwelcome and inappropriate sexual requests by Plaintiff's direct supervisor, Ira Bertrand. Plaintiff was a

witness to this and expressed her opposition to that sort of behavior directly to Bertrand and also to the Mayor, Henry Guinn (hereinafter referred to as "Guinn").

13. Plaintiff, as an African American female, was subject to the consistent failures to promote of the City of Jennings as younger, less experienced and less qualified Caucasians were promoted beyond laborer positions over Sanders.

14. Furthermore, the openly hostile position that the City, and Plaintiff's direct supervisors, took toward its African American employees was made manifest in a multitude of ways over the course of a seventeen (17) year career. One such example, and the impetus of the filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is described below.

15. On or about March 16, 2020 the Plaintiff and an individual named Dwight Dayton (hereinafter referred to as "Dayton") were tasked with cutting grass on a 15–20-acre lot.

16. Plaintiff's supervisor, Ira Bertrand (hereinafter referred to as "Bertrand") had engaged in a long-standing pattern of discriminatory "nit-picking" in order to find any and all fault with Plaintiff's work. Notably, this pattern of nit picking was not a behavior that Bertrand engaged in with males or Caucasians under his supervision.

17. The assignment on March 16, 2020 was no different, as Bertrand placed Plaintiff under extreme stress to get this lot cut as fast as possible. This urgency was for no apparent reason other than to place an undue burden on Plaintiff and was motivated by discriminatory and retaliatory motive by Bertrand.

18. Normally for any particular assignment, a crew of five (5) individuals are sent. For the March 16, 2020 assignment there were only two individuals assigned: Dayton and Plaintiff.

19. Surprisingly, on this particular day, two white male co-workers showed up to escort Dayton for an unplanned drug test. This is unusual for the City because drug tests are not administered at random, rather for a direct cause – such as an injury or accident. Nonetheless, Dayton was escorted from the job leaving Plaintiff as the sole individual to cut and finish an extremely large tract of land.

20. Following a pattern of discriminatory treatment, Dayton, who is also African American, was subjected to a random drug screen, which upon information and belief is not city policy. Dayton was forced to comply with this drug test despite there being no suspicion of drug usage or any direct causal occurrence leading to such a request.

21. The removal of Dayton, which Plaintiff alleges was nothing more than mere pretext for retaliation and discrimination on the part of Bertrand, forced Plaintiff to work the assignment alone. Plaintiff was provided no additional help or other laborers but rather was instructed to finish the job and do so alone.

22. Plaintiff worked as hard as possible under the conditions and during the process of continued grass cutting that day, after much time had passed, Plaintiff became nauseated, felt lightheaded and called her sister for help; later it was determined by her medical providers that she was very close to experiencing a stroke, with her blood pressure being elevated above 200/110.

23. As a direct result of the stress and strain this particular assignment placed on Plaintiff's body, she was forced to go on medical leave to address the health issues caused by the City's discriminatory and retaliatory action in forcing Plaintiff to work an unusually large jobsite and to do so alone, rather than the usual assignment of five (5) individuals.

24. Following her commencement of extended medical leave to tend to injuries exacerbated during the course and scope of performing her duties as a laborer, Plaintiff was called a mere week later, while resting at home, by a city clerk to return to city hall. When Plaintiff inquired as to why, no reason was provided, rather that Plaintiff needed to "do what she was told." The City maintained no concern for Plaintiff's wellbeing or physical condition.

25. Despite the danger to her health to do so, Plaintiff left her home feeling weak and fatigued and made her way to city hall. When she arrived, she was quickly met by the City Attorney Kevin Millican (hereinafter referred to as "Millican") and Payroll Clerk Julie Dupree (hereinafter referred to as "Dupree") and was told that she must sign a HIPPA medical release at this stage of her sick leave.

26. Upon good information and belief, no other City employees are required to sign HIPPA releases while on sick leave and so Plaintiff questioned as to why this was being required of only herself. She was then told that it was only a formality and that "you cannot return to work without it being signed." Notably, at this time Plaintiff was still under medical care and had not been cleared by her doctor to even begin the process of work resumption.

27. When Plaintiff took the document to her doctor for his review, he shared Plaintiff's concern about the document, refused to sign the same, and suggested that Plaintiff seek legal counsel.

28. Plaintiff had in years past raised her concerns about promotional inequality, failures to promote, inappropriate sexual comments, and younger individuals being promoted over Plaintiff directly to Bertrand with no action. In some cases, Plaintiff would go to Mayor

Guinn to seek redress. Yet year after year, the City of Jennings through its officers and actors took no remedial actions whatsoever.

29. Plaintiff decided, in light of all that had recently happened, in addition to the years of discriminatory slights that preceded these recent events, that it was time to take some additional action to try and remedy these longstanding issues. As such, on or about March 30, 2020, while still out on medical leave, Plaintiff filed a Charge of Discrimination with the EEOC. *See* Exhibit C.

30. Subsequent to her EEOC filing, Plaintiff continued to rest at home under her doctor's care, when suddenly in April of 2020, her sister, Meshall Sanders (hereinafter "Meshall"), who works for the City of Jennings, was told by Julie Dupont (hereinafter "Dupont") that Plaintiff had been fired for allegedly not providing a doctor's excuse.

31. When word reached Plaintiff that she had been fired, because of allegedly not providing a Doctor's excuse, she immediately contacted the doctor's office to ensure and verify that the City had been providing all notices as required and in addition, her doctor's office provided her with receipt copies of information provided to the City of Jennings on her behalf, during her excused sick leave period. *See e.g.,* Exhibit D. Also, subsequent to her termination, Plaintiff requested, and her doctor provided, a report summarizing those communicative efforts. *See* Exhibit E.

32. At that time, Plaintiff had still not received any formal termination paperwork or even been advised of any firing but out of a sense of prudence, she continued to gather all the Doctor provided receipts or excused absences and put them in the mail to the City and her supervisor for verification via next day mail. *See* Exhibit F.

33. Shortly thereafter, Plaintiff received a notice, dated April 22, 2020, that indicated some City action must have occurred as she was notified that her City provided insurance was being terminated. Again, all of this is occurring without notice or communication to Plaintiff. *See* Exhibit G.

34. On April 30, 2020 Plaintiff was finally contacted by City administration and was told to come off sick leave and meet with Mayor Guinn. Though still sick and under doctor's care, Plaintiff met with Guinn and City Attorney Millican who questioned her and tried consistently to get Plaintiff to either quit or resign in this meeting. Yet, Plaintiff steadfastly refused.

35. In this same meeting, in which Plaintiff recorded, the Mayor specifically questioned the Plaintiff about her recent March 30, 2020 EEOC submittal. Not only confirming his knowledge of the same but his frustration and anger with the submission. The foregoing made Plaintiff extremely uncomfortable in what was already a tense exchange and, as such, Plaintiff declined to go into more detail regarding the EEOC complaint despite repeated and unrelenting efforts by the Mayor.

36. Guinn insisted that Plaintiff show up later that day, April 30, 2020, for a formal termination notice, but when Plaintiff returned as directed, no one was at the office. Rather the only paperwork that Plaintiff ever received memorializing her termination was a Louisiana Workforce Commission Separation Notice indicating her date of termination as April 22, 2020. *See* Exhibit H.

37. The contention that Plaintiff was terminated for failing to submit documentation supporting her medical leave is quite simply remarkable in light of the documentary evidence to the contrary. This pretextual basis for Plaintiff's termination is further

undermined and deficient in believability by virtue of the impromptu meeting called with Guinn on April 30, 2020. Had Plaintiff been terminated for failing to provide medical documentation, a forced resignation meeting on the 30th of April would not be necessary. The termination of Plaintiff was not simply a culmination of continued discriminatory animus, but also greatly animated by her decision to engage in protected activity and seek the assistance of the EEOC.

38. Furthermore, even if the City lacked the necessary documentary evidence, which is disputed, a simple phone call or email to Plaintiff or her doctor could have clarified the same. The City's extreme and immediate response to terminate employment for an alleged minor documentary infraction while an employee is on sick leave, as a direct result of discriminatory animus, is only further evidence of that same animus. This disparate, and far harsher, treatment is emblematic of the treatment Plaintiff received at the hands of the City of Jennings over a seventeen-year career.

## FIRST CAUSE OF ACTION:
## AGE DISCRIMINATION IN EMPLOYMENT
*Pursuant to 29 U.S.C. § 621 et seq.*

39. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

40. At the time of the adverse employment action, Plaintiff was over forty (40) years old and is therefore a member of a protected class.

41. Plaintiff was qualified for her position as a laborer. Plaintiff successfully served in such capacity for the full seventeen (17) years of her employment, all without issue and without notable disciplinary action.

42. As of the date of this Petition, Plaintiff has suffered material adverse employment action by 1) being passed over for promotions at the hands of younger and less qualified individuals and 2) being terminated, rather than simply disciplined, for a minor documentary infraction.

43. Plaintiff's age was a determining factor in treating Plaintiff less favorably than younger employees.

44. Upon good information and belief, based on disparate treatment, Plaintiff alleges that she was subjected to unlawful discrimination on the basis of her age.

45. Upon good information and belief, the City of Jennings promoted younger individuals such as Trent Broussard (hereinafter "Broussard") to supervisor over a crew despite having less experience and less knowledge than Plaintiff. As a further example, Brian Deshotel (hereinafter referred to as "Deshotel") was promoted to "crew lead" despite having less experience and knowledge than Plaintiff. These promotions happened over and rather than Sanders, at her direct exclusion.

46. On several occasions, Plaintiff opposed what she perceived to be discriminatory treatment on the basis of her age to Bertrand and Guinn. Bertrand would act as though Plaintiff should either quit or "shut up" and acted confused as to why Plaintiff would even bother to bring these issues to his attention. The city of Jennings did nothing to rectify the situation.

47. Wherefore Plaintiff asks this Honorable Court to find the **CITY OF JENNINGS** liable for the violation of the Age Discrimination in Employment Act.

{*Remainder of Page Intentionally Left Blank*}

## SECOND CAUSE OF ACTION:
## RACIAL DISCRIMINATION IN EMPLOYMENT
*Pursuant to 42 U.S.C. § 2000e et. seq.*

48. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

49. Plaintiff was amply qualified for the position of laborer and worked the position with exemplary results for more than seventeen (17) years.

50. Plaintiff sought promotion opportunities yet was consistently passed over by younger, less experienced Caucasian males. Furthermore, upon good faith information and belief, Caucasian workers at the "laborer" level were paid more than Sanders despite her more than seventeen-year record with the City of Jennings.

51. The easier or more desirable jobs are mostly given to white males to the exclusion of the African American laborers.

52. Plaintiff's work was consistently "nit-picked" by supervisor Ira Bertrand, placing a more exacting standard upon Plaintiff, whereas less satisfactory work was deemed sufficient when performed by a Caucasian.

53. For those jobs wherein a problem might occur, Plaintiff was immediately singled out as being at fault for the job's poor outcome, even though, Plaintiff was never allowed to be a supervisor or ever promoted to be in charge of a job. Plaintiff was even more so a target in the event that the poor outcome was clearly the fault of a Caucasian worker.

54. During the time Plaintiff was denied promotions, nit-picked in her work, or held to a different standard of performance, Plaintiff, as an African American, was a member of a protected class.

55. Upon good information and belief, two (2) Caucasian individuals were awarded the promotions in lieu of Plaintiff. Namely, Deshotel and Broussard, who were both newly hired and less experienced than Plaintiff.

56. Plaintiff opposed what she perceived to be discriminatory treatment on the basis of her race to both her supervisor, Bertrand, and Mayor Guinn. Bertrand would act as though Plaintiff should either quit or "shut up" and acted confused as to why Plaintiff would even bother to bring these issues to his attention. The City of Jennings did absolutely nothing to remedy the situation.

57. Wherefore Plaintiff asks this Honorable Court to find the **CITY OF JENNINGS** liable for the violation of Title VII of the Civil Rights Act of 1964.

**THIRD CAUSE OF ACTION:**
**SEXUAL ORIENTATION HARASSMENT DISCRIMINATION IN EMPLOYMENT**
*Pursuant to 42 U.S.C. § 2000e et. seq.*

58. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

59. Plaintiff was amply qualified for the position of laborer and worked the position with exemplary results for more than seventeen (17) years.

60. Plaintiff experienced discriminatory remarks, harassment, inappropriate comments, and hostility due to her status as an openly lesbian woman working in a labor intensive and male dominated field. For example, being refused access to the ice machine as "off limits" because "someone like you could contaminate it".

61. At the time Plaintiff was harassed and subject to overt hostility, Plaintiff, an individual of lesbian sexual orientation, was a member of a protected class.

62. Plaintiff opposed what she perceived to be discriminatory treatment on the basis of her race. Bertrand would act as though Plaintiff should either quit or "shut up" and acted confused as to why Plaintiff would even bother to bring these issues to his attention. The City of Jennings did absolutely nothing to remedy the situation.

63. Wherefore Plaintiff asks this Honorable Court to find the **CITY OF JENNINGS** liable for the violation of Title VII of the Civil Rights Act of 1964.

**FOURTH CAUSE OF ACTION:**
**RETALIATION**
*Pursuant to 42 U.S.C. § 2000e-3(a)*

64. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

65. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because she has opposed any practice made an unlawful practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

66. Plaintiff would continually engage in protected opposition activity by voicing her concerns to her Supervisor, Ira Bertrand, and Mayor Guinn regarding the disparate treatment shown to Caucasian individuals in promotion and pay rates. Plaintiff voiced opposition to the unwanted and inappropriate sexual requests Bertrand leveled toward co-worker, Benoit. Plaintiff voiced opposition to the disparate treatment afforded to younger individuals in both promotions and pay rates. These protected opposition activities earned

her the ire of Bertrand who subjected her to increased work scrutiny, disparate standards of work performance, and continual promotional rejections.

67. By filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") the Plaintiff then engaged in perhaps the most well-known form of protected participation activity on or about March 30, 2020.

68. Defendant, Henry Guinn, had actual knowledge of Plaintiff's complaint with the EEOC as he had received it from the EEOC and admitted to the same in a recorded conversation with the Plaintiff while trying to force her to quit.

69. Furthermore, upon good information and belief, the City of Jennings received Plaintiff's charge *prior* to the April 22, 2020 termination date. In fact, information provided indicates that it was merely a few days prior to the 22nd of April that the City of Jennings received Plaintiff's March 30, 2020 charge of discrimination.

70. Plaintiff's filing of a Charge of Discrimination constitutes protected participation activity and the extremely close temporal proximity between the City's knowledge of that activity and the Plaintiff's termination raises a substantial inference of retaliatory animus and motivation in the reason for termination, rather than the purported, and alleged, minor documentary oversight.

71. As set forth above, Defendant, the City of Jennings, through its agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of her employment in retaliation for her opposing what she believed to be unlawful conduct on various occasions as well as participating in the EEOC process, through the filing of a charge.

72. The City of Jennings has long exhibited retaliatory animus to those that speak against what they reasonably perceive as unlawful conduct. Several officers who were called to give deposition testimony in another employment discrimination suit against the City of Jennings, entitled *Christopher Lehman v. Todd D'Albor, et. al.* Civl Action No. 2:16-cv-00783, were subjected to similar, retaliatory conduct. In fact, almost all of the employees who gave deposition testimony have, for one reason or another, departed from their respective employment with the Jennings Police Department.

73. For example: (1) Christopher Wallace voiced his concerns of retaliatory conduct taken after his deposition in the *Lehman* litigation; (2) Debbie Breaux (hereinafter referred to as "Breaux") was issued an inexplicable two-month suspension shortly after her deposition. She was constructively discharged shortly thereafter. Breaux filed suit against the City of Jennings over this constructive discharge; and (3) Claude "Winston" Guillory was almost immediately transferred to the Maintenance Department by Police Chief Danny Semmes following his deposition in the *Lehman* litigation and was discharged shortly thereafter.

74. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

75. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

76. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

77. Wherefore Plaintiff asks this Honorable Court to find the City of Jennings liable for the violation of 42 U.S.C. § 2000e-3(a).

## FIFTH CAUSE OF ACTION:
## HOSTILE WORK ENVIROMENT

78. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

79. The constant nit-picking of work, the discriminatory remarks made to Plaintiff regarding her race and her sexual orientation and the discriminatory treatment she continuously received from that of her Caucasian co-workers caused Plaintiff substantial embarrassment, grief, anxiety and mental anguish.

80. The harassment was so severe or so pervasive that it altered the conditions of Plaintiff's employment and created an abusive atmosphere. The continued harassment prompted Plaintiff to seek medical leave and was taken off of work due to the anxiety created in such an atmosphere.

81. Although the City of Jennings was made aware of the hostile work environment promulgated by Ira Bertrand, and other agents and/or employees of Defendant, when Sanders would raise the complaints to Bertrand he would act as though Plaintiff should either quit or "shut up" and acted confused as to why Plaintiff would even bother to bring these issues to his attention. Mayor Guinn's indifference to the plight of Sanders was no better. As such, the City of Jennings took no remedial action to stop the hostile environment and to prevent this type of unlawful activity from occurring.

82. The City of Jennings, through its agents and officers, knowingly, and intentionally allowed the hostile work environment to exist.

83. The City of Jennings, by its overt act or failure to act herein, supported the ongoing hostile work environment.

84. Wherefore Plaintiff asks this Honorable Court to find the City of Jennings liable for creation of a hostile work environment based on Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964.

---

### SIXTH CAUSE OF ACTION:
### VIOLATION OF 42 U.S.C. § 1981

---

85. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

86. 42 U.S.C.S. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race. 42 U.S.C.S. § 1981(a). The statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.S. § 1981(b). 42 U.S.C.S. § 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts. 42 U.S.C.S. § 1981.

87. Plaintiff incorporates the contents of Paragraphs 10-38 and 48-54 by reference, as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

88. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. 1981, Defendant, the City of Jennings, liable for depriving Plaintiff, Deidre Sanders, of rights, privileges, or immunities secured by the Constitution and law.

*{Remainder of Page Intentionally Left Blank}*

## SEVENTH CAUSE OF ACTION:
## RESPONDEAT SUPERIOR
*Pursuant to La. Civ Code art. 2320*

89. The acts of Plaintiff's supervisors, managers, and co-workers were performed while the actors were within the course and scope of their employment with the Jennings City Police Department.

90. The conduct of Plaintiff's supervisors, managers, and co-workers as outlined herein was approved by Defendant, as Defendant took no steps to change, alter, stop, or modify said conduct.

91. At the time of the conduct, Plaintiff's supervisors and managers were acting on Defendant's behalf.

92. After the events complained of, Defendant was made aware of Plaintiff's supervisor's acts, and approved them by its continuous failure to act.

93. Therefore, Defendant the **CITY OF JENNINGS** is liable for the acts of Plaintiff's supervisors and managers as outlined herein.

## PRAYER

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, including "drop" retirement benefits, front pay, and any and all statutory relief;

(b) Punitive or exemplary damages (for the §1981 action);

(c) Liquidated damages;

(d) Reasonable attorney's fees, with conditional awards in the event of appeal;

(e) Pre-judgment interest at the highest rate permitted by law;

(f) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(g) Costs, including expert fees;

(h) Reasonable and necessary medical care and expenses in the past and future;

(i) Mental anguish damages in the past and future;

(j) Injunctive relief; and

(k) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

---

### DEMAND FOR JURY TRIAL
---

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Tel: (337) 480 - 0101
Fax: (337) 419 - 0507
E-mail: james@saa.legal

BY: _/s/ James E. Sudduth, III_
**JAMES E. SUDDUTH, III, #35340**
**KOURTNEY L. KECH, #37745**
**PIERCE A. RAPIN, #38975**
*Counsel for Deidre L. Sanders*